IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
THOMAS HOPKINS,                   §
                                  §
            Plaintiff,            §
                                  § Civil Action No. 3:10-CV-1857-D
VS.                               §
                                  §
WELLS FARGO BANK, N.A.,           §
et al.,                           §
                                  §
            Defendants.           §
```

MEMORANDUM OPINION
AND ORDER

Plaintiff Thomas Hopkins ("Hopkins") moves for a preliminary injunction to prevent defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Wachovia Mortgage FSB, and World Savings Bank, FSB from foreclosing on his residence. For the reasons that follow,[1] the court denies the motion.

I

Through a broker, Hopkins obtained a loan to refinance the purchase of his residence. The loan is a "Pick-A-Pay" loan, i.e., a type of adjustable rate mortgage that allows the borrower to choose his monthly payment from four different options. Hopkins selected a loan with a prearranged minimum monthly payment that did not necessarily include the full interest accrued during the

---

[1]Hopkins' preliminary injunction application is before the court under the procedure permitted by Fed. R. Civ. P. 43(c) and is being decided on the papers without an evidentiary hearing. *See, e.g., Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006).

preceding month.  Thus the interest that Hopkins did not pay in a given month was added to the unpaid principal, resulting in negative amortization.

After one year, the minimum payment increased by up to 7.5% per year for the next four years.  Once the unpaid principal balance exceeded 125% of the principal originally borrowed, the minimum monthly payment increased to an amount sufficient to repay the unpaid principal balance in full by the maturity date of the loan.  For example, the Regulation Z federal truth in lending disclosure showed that the minimum monthly payment was $1,177.58 for the first year, $1,572.62 for the fifth year, and $3,105.28 for the final twenty years of the thirty-year loan.[2]  The loan also required that Hopkins pay a prepayment charge if he paid payments toward principal before they were otherwise due during the first three years of the loan term.  Hopkins alleges that he mistakenly believed that his monthly payment was fixed; that he was not given time before he signed the loan to review the loan documents; that the contents of the documents were not adequately disclosed to him; and that he relied to his detriment on defendants' disclosures and failure to disclose.  Hopkins sues defendants alleging that (1) they conspired to, solicited to, and did, breach a fiduciary duty owed to him; (2) they conspired to, and did, defraud him; and (3)

---

[2]The final payment, due September 15, 2037, is actually slightly lower: $3,101.09.

they violated the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.826 (West 2002 & Supp. 2010).

After several months of inactivity—the case was removed to this court in September 2010—the property was posted for the January 4, 2011 foreclosure sale. Hopkins initially moved for a preliminary injunction to prevent the sale. By December 15, 2010 order, the court informed the parties that it would decide the motion on the basis of affidavits, deposition excerpts, and/or exhibits pursuant to Fed. R. Civ. P. 43(c). A few days later, Hopkins moved for a temporary restraining order ("TRO"). The court granted the TRO motion to enable it to consider Hopkins' preliminary injunction motion, but it specifically permitted defendants to post the property for the March 2011 foreclosure sale.

In support of his TRO motion, Hopkins filed an appendix that included (1) his original state-court petition for injunctive relief and damages; (2) the affidavit of Marlowe Moreland ("Moreland"); (3) a report by Moreland; (3) the note; (4) Hopkins' affidavit verifying the facts in the original petition; and (5) the Regulation Z federal truth in lending disclosure. Hopkins' motion for preliminary injunction and brief are six pages long, and Hopkins has not filed a supporting appendix. In the court's December 15, 2010 order, it ordered Hopkins as the moving party to

provide supporting materials in the form of an appendix, and it directed that his brief include citations to each page of the appendix that supports each assertion made concerning the evidence. Hopkins did not submit an appendix in support of his motion. Instead, his motion and brief adopt the facts and argument of his TRO motion and brief and the appendix in support of the TRO motion. Although Hopkins did not comply with the court's order, defendants have responded to the arguments and evidence contained in Hopkins' TRO motion, brief, and appendix. Accordingly, the court in its discretion will consider the TRO papers in determining whether Hopkins has shown that he is entitled to a preliminary injunction.

II

To obtain a preliminary injunction, the party seeking relief must establish the following: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to him outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). Although the decision to grant a preliminary injunction is within the court's discretion, it is an extraordinary remedy that should only be granted if the movant has

clearly carried its burden of persuasion on all four elements. *See, e.g., Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

III

Hopkins must establish a substantial likelihood of success on the merits. The court first considers his breach of fiduciary duty claim.

Hopkins argues that defendants are liable for breach of fiduciary duty on the grounds that they (1) deceptively lured borrowers into believing that they and their brokers and agents were "trusted advisors" and were looking out for Hopkins' welfare; (2) financially rewarded their agents for selling loans at a higher interest rate or with a prepayment penalty; and (3) encouraged and financed the predatory lending of their brokers and agents. Defendants respond that lenders like Wells Fargo do not owe fiduciary duties to borrowers like Hopkins.[3]

Under Texas law, "[l]enders and their agents ordinarily have no fiduciary duty to borrowers or putative borrowers." *In re Absolute Res. Corp.*, 76 F.Supp.2d 723, 734 (N.D. Tex. 1999)

---

[3]Defendants also assert that Hopkins' breach of fiduciary duty claim is preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1462, *et seq.*; that the broker is not defendants' agent; and that Hopkins has not adequately pleaded his breach of fiduciary duty claim. Because the court concludes that Hopkins has failed to establish that defendants owed him a fiduciary duty, the court need not consider defendants' other arguments.

(Maloney, J.) (citing *Cogan v. Triad Am. Energy*, 944 F. Supp. 1325, 1329 (S.D. Tex. 1996), and *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)). "[T]he great weight of Texas authority is against the proposition that the relationship between a lender and a borrower is a formal fiduciary relationship." *FDIC v. Byrne*, 736 F. Supp. 727, 733 n.8 (N.D. Tex. 1990) (Fitzwater, J.) (citing *Lowell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 303 (Tex. App. 1998, writ denied)). "In order to prove that a fiduciary relationship does exist in such a context, the plaintiff must show extraordinary circumstances such as excessive control and influence by the lender on the borrower's business activities." *In re Absolute Res. Corp.*, 76 F.Supp.2d at 734.

Hopkins has not shown extraordinary circumstances like excessive control or influence by defendants. And he has failed to show that there is a substantial likelihood that he will succeed on his breach of fiduciary duty claim.[4]

IV

The court turns next to Hopkins' fraud claim.

A

Hopkins apparently argues that defendants committed fraud directly and through their agents. Hopkins asserts that (1) defendants through their agents made false statements to him

---

[4] Hopkins also alleges that the defendants conspired to, and solicited, breach of the fiduciary duty owed him. These grounds of his claim fail for the same reasons.

intending that he rely on them; (2) defendants breached their duty to disclose certain information to him; and (3) defendants misrepresented the terms of the loan. Hopkins avers that he detrimentally relied on the statements and that he has suffered damage as a result. Defendants respond that Hopkins has not adequately pleaded that the broker was defendants' agent or that defendants committed fraud directly.[5]

B

Under Texas law, a claimant alleging fraud must prove the following:

> (1) that a material representation was made;
> (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th

---

[5]Defendants also assert that Hopkins' fraud claim is preempted by HOLA and that the broker is not defendants' agent. The court need not address these arguments.

Cir. 2003). "'At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). In other words, the claimant must plead the "who, what, when, where, and how" of the fraud. *Id.* (internal quotation marks and citation omitted). Although these standards set forth the requirements for sufficient pleading, they are instructive in this context as well. If Hopkins essentially relies on the allegations of his complaint, and he has not adequately *pleaded* fraud, he cannot establish that there is a *substantial likelihood* of success on the merits of his fraud claim. *See, e.g., Adamczyk v. Thrivent Fin. Bank*, 2010 WL 5677942, at *4 (N.D. Fla. Nov. 24, 2010) (recommending that court deny motion for preliminary injunction where complaint was insufficient and, correspondingly, plaintiff could not show substantial likelihood of success on the merits) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)), *rec. adopted*, 2011 WL 333461 (N.D. Fla. Jan. 31, 2011).

C

Defendants argue that Hopkins has not shown that he is substantially likely to succeed on the merits of his fraud-by-agent claim because he has not shown that the broker was defendants' agent. The court agrees. Hopkins conclusorily states that

defendants, through their agents, made false statements to him. Hopkins also alleges that false statements were made by the broker in his capacity as agent. Under Texas law, a principal is vicariously liable for the torts of its agent committed in the course and scope of his employment. *See Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citing *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999)). But Hopkins has not provided a sufficient evidentiary basis for the court to find that there was an agency relationship between the broker in question and defendants. Moreover, even if Hopkins has alleged some facts that allow for the *possibility* that the broker was defendants' agent, he has not shown that there is a *substantial likelihood* that he will succeed on his fraud-by-agent claim.

D

Defendants also argue that Hopkins is not substantially likely to succeed on the merits of his direct fraud claim. Hopkins must allege the "who, what, when, where, and how" of the fraud. *See Benchmark Elecs., Inc.*, 343 F.3d at 724. Hopkins has not alleged that any specific employee of defendants made a misrepresentation. Instead, Hopkins alleges that misrepresentations were made by defendants generally, and by defendants through unnamed agents and employees. No more specific information is provided. The court therefore holds that Hopkins has not established that there is a substantial likelihood that he will succeed on his direct fraud

claim.[6]

V

Finally, the court addresses whether Hopkins has established a substantial likelihood that he will succeed on the merits of his DTPA claim.

A

Hopkins alleges that he is a consumer under the DTPA; defendants violated the DTPA by making or disseminating untrue and misleading statements with the intent to induce him; and he was damaged as a result. Defendants argue that Hopkins is not a "consumer" under the DTPA and therefore cannot recover under the DTPA. Hopkins apparently concedes in his reply that he is not a DTPA consumer. *See* P. Reply 5.

B

The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code § 17.50(a)(1). A "consumer" is an "individual . . . who seeks or acquires by purchase or lease, any goods or services[.]" Tex. Bus. & Com. Code § 17.45(4). Money is not a good or a service under the DTPA; therefore, a person who seeks to borrow money is typically not a consumer under the DTPA. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984); *see*

---

[6]Hopkins also alleges that defendants conspired to defraud him. This ground of his claim fails for the same reasons.

*also Patterson v. Long Beach Mortg. Co.*, 2009 WL 4884151, at *10 (N.D. Tex. Dec. 15, 2009) (O'Connor, J.) (accepting recommendation of magistrate judge). A person who borrows money to purchase or lease a good or service may be a consumer, however, if (1) he is a consumer in relation to the transaction at issue and (2) the good or service he sought or acquired in the transaction is the basis for his claim. *Sibley v. Diversified Collection Servs., Inc.*, No. 3:96-CV-0816-D, slip op. at 25-26 (N.D. Tex. June 10, 1997) (Fitzwater, J.) (citing *Walker v. FDIC*, 970 F.2d 114, 123 (5th Cir. 1992)). Hopkins does not allege that he used the loan to purchase a good or service that forms the basis for his claim; in other words, he does not claim that a DTPA violation has occurred with respect to his refinanced property.

Because Hopkins has not shown that he is a DTPA consumer, he has not shown a substantial likelihood of success on the merits of his DTPA claim.

VI

Because Hopkins has not established a substantial likelihood of success on the merits of any of his claims, the court need not address the other necessary elements for preliminary injunctive relief. *See, e.g., La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 225 (5th Cir. 2010).

\* \* \*

Hopkins' January 10, 2011 motion for preliminary injunction is denied. Defendants' January 31, 2011 motion to exclude expert affidavit and report is denied as moot.

**SO ORDERED.**

February 18, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE